UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MARVIN ANDERSON,                                    :

                    Plaintiff,           :

      -against-                               :

J. MARR, et al.,                                    :

               Defendants.          :

-------------------------------------------------------x

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED:   7/18/11 |

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
SIDNEY H. STEIN**

10 Civ. 818 (SHS) (FM)

**FRANK MAAS,** United States Magistrate Judge.

      Pro se plaintiff Marvin Anderson ("Anderson") brings this action pursuant

to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S.

388 (1971), seeking both monetary and injunctive relief for numerous wrongs inflicted

upon him during his incarceration at three federal prisons:  (i) the Federal Correctional

Institution at Otisville, in Otisville, New York ("Otisville"); (ii) the Metropolitan

Detention Center in Brooklyn, New York ("MDC"); and (iii) the United States

Penitentiary at Allenwood, in Allenwood, Pennsylvania ("Allenwood").  Anderson has

named more than forty officials at these institutions as defendants in this case

(collectively, the "Defendants").

      The Defendants have moved to dismiss Anderson's Second Amended

Complaint ("SAC")[1] pursuant to Rules 12(b)(2), (3), and (6) of the Federal Rules of Civil

---

[1]     Although Anderson refers to this document as his "3[rd] Amended Complaint,"

                                                           (continued...)

Procedure, or, in the alternative, for summary judgment pursuant to Rule 56.  (ECF No. 30).  For the reasons set forth below, the Court should grant that motion in its entirety.

I.     Background

       A.     Facts

              Unless otherwise noted, the following facts, which are either undisputed or taken from the SAC and Anderson's affidavit in opposition to the Defendants' motion ("Anderson Aff."), are presumed to be true.

              1.     Conviction and Sentence

              On November 1, 2007, a jury in the Southern District of New York convicted Anderson on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  See United States v. Anderson, No. 07 Cr. 265 (GBD).  Thereafter, on May 15, 2008, Judge Daniels sentenced Anderson to a term of forty-eight months' imprisonment, to be followed three years of supervised release.[2]  Id. (ECF No. 33).

---

              [1](...continued)
(see ECF No. 27 at 1), the Court's docket sheet confirms that he amended his complaint only once prior to filing the SAC.  (See ECF Nos. 16-17).

       [2]     After the Second Circuit affirmed Anderson's conviction and sentence by summary order dated July 21, 2009, United States v. Anderson, No. 08-2600-cr, 2009 WL 2171301, at *1-2 (2d Cir. July 21, 2009), the Supreme Court denied his petition for a writ of certiorari on November 2, 2009, Anderson v. United States, 130 S. Ct. 530 (2009).

2.      Otisville

Anderson began serving his sentence at Otisville on September 11, 2008. (Decl. of Adam Johnson, Esq., sworn to on Dec. 13, 2010 (ECF No. 31) ("Johnson Decl."), ¶ 3).  On December 26, 2008, Anderson was placed in administrative segregation after prison officials received word that he had been involved in a fist fight that morning with an inmate named Nash ("Nash").  (See SAC at 7; Ex. A).[3]  In a subsequent interview with a member of the Special Investigative Services ("SIS") office,[4] the body charged with investigating the incident, Anderson denied his involvement in the altercation.  (See Ex. C ("DHO Report") at 2).

On January 27, 2009, upon the completion of the SIS investigation, Anderson was given a copy of an incident report prepared by SIS, which concluded that he had, in fact, fought with Nash.[5]  (See Ex. A).  Two days later, Anderson appeared before the Unit Discipline Committee ("UDC") for a hearing.  (See id.; Johnson Decl. ¶ 4).  During the hearing, Anderson again denied his involvement in the fight, stating that he was unaware of what the UDC was "talking about."  (Ex. A).  The UDC nevertheless determined that "the great weight of evidence support[ed] a finding of guilt."  (Id.).  The

---

[3]      "Ex. _" refers to the exhibits annexed to the Johnson Declaration.

[4]      The acronym "SIS" used in the DHO Report stands for Special Investigative Services.  See Sanchez v. Orengo, No. 06 Civ. 11359 (NRB), 2007 WL 1944350, at *1 (S.D.N.Y. June 28, 2007).

[5]      The incident report explained:  "On December 26, 2008 in the morning hours inmates Anderson . . . and Nash . . . had a verbal altercation which led to a physical altercation in the lower 100 dorm in unit G-B where both inmates were exchanging punches and sustained injuries consistent with being in a fight."  (Ex. A).

3

UDC referred the matter to a Disciplinary Hearing Officer ("DHO") for further proceedings.  Additionally, the UDC recommended that Anderson (a) be docked "Good Conduct Time,"[6] (b) be placed in disciplinary segregation for an additional fifteen days, and (c) lose his telephone privileges for ninety days.  (Id.).

After the UDC hearing, Anderson was provided with a "Notice of Discipline Hearing" form ("Notice of Hearing Form"), which advised him that a disciplinary hearing on the charge of fighting with another inmate would take place before a DHO in February 2009.  (See Ex. B ("Notice of Hearing Form")).  The Notice of Hearing Form further cautioned Anderson that he had the right to remain silent at the hearing and that his silence "may be used to draw an adverse inference against [him]," but that a negative inference based on his silence could not be the sole basis for finding that he had committed a "prohibited act."  (Id. at 2).  Anderson also was informed of his rights to have a member of the prison staff represent him at the hearing, to call witnesses and present documentary evidence in his defense, and to appeal the DHO's decision to the Regional Director of the Federal Bureau of Prisons ("BOP") "within 20 calendar days of notice of the DHO's decision and disposition."  (Id.).

---

[6]     Pursuant to 18 U.S.C. § 3624(b)(1), a federal prisoner "who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term."

The Notice of Hearing Form indicates that, although Anderson elected to waive his right to a staff representative, he identified Nash as a witness whom he intended to call to testify that they "didn't have a fight."[7]  (Notice of Hearing Form at 1).

Defendant J.M. Banks ("DHO Banks") held the DHO hearing on February 4, 2009.  According to the DHO Report, Anderson waived his right to be represented at the hearing, declined to make a statement, and did not call any witnesses to testify on his behalf.  Like the UDC, DHO Banks found that Anderson had a physical altercation with Nash on December 26, 2008, expressly noting that he drew an adverse inference from Anderson's refusal to make a statement at the hearing.  The DHO further noted that, in reaching his decision, he relied not only on Anderson's silence, but also on the incident report and photographs depicting injuries to Anderson and Nash consistent with fighting.[8]  As punishment, DHO Banks ordered that Anderson (a) be placed in disciplinary segregation for a period of thirty days, with fifteen days suspended, (b) lose twenty-seven days of Good Conduct Time, and (c) not be permitted to use the telephone for three months.  Anderson again was advised of his right to appeal the DHO's decision.  (See DHO Report at 1-3).

_____

[7]     Although Anderson checked the space on the Notice of Hearing Form indicating that he did not wish to call any witnesses, he nevertheless provided Nash's name, identification number, and proposed testimony.  (Notice of Hearing Form at 1).  In light of Anderson's allegation that he "requested to call inmate Nash," at the hearing, (Anderson Aff. ¶ 8), I have interpreted the form as evincing Anderson's desire to call Nash as a witness.

[8]     The photographs showed that Anderson had an abrasion on his right hand as well as a laceration to the inside of his upper lip, while Nash had a laceration, swelling of his left eye, and a chipped tooth.  (DHO Report at 2).

The DHO Report indicates that Anderson received a copy of the report on March 9, 2009, even though it was signed on February 24, 2009.  (DHO Report at 3). Anderson contends, however, that he was not furnished a copy of the DHO Report until "sometime after March 9-2009."  (Anderson Aff. ¶ 11).  No matter when Anderson actually received the DHO Report, it is undisputed that the BOP did not receive Anderson's appeal of the DHO's decision until April 13, 2009.  (Johnson Decl. ¶ 10). Later that month, Anderson received a letter notifying him that the BOP had denied his appeal as untimely.  (See id.; SAC at 9).  Anderson subsequently filed an appeal with the BOP's Office of General Counsel on December 30, 2009, which likewise was rejected as untimely.  (Johnson Decl. ¶¶ 8, 10).

On February 20, 2009, defendant Janice M. Killian, the Warden at Otisville, requested that Anderson be transferred to a more secure facility, explaining that the "continued animosity" between Anderson and Nash, "the likelihood of retaliation," and Anderson's "lengthy incident report history" demonstrated that Anderson warranted "a higher level of supervision than a Medium Security Level Facility [such as Otisville] can provide."  (Ex. D).  Accordingly, on March 25, 2009, Anderson was transferred from Otisville to the MDC.  (SAC at 9).  Anderson was not afforded a hearing prior to his transfer.  (Id.).

3.    MDC

Upon his arrival at the MDC in Brooklyn, Anderson again was placed in administrative detention, (see id.), although it is unclear how long he remained there.

6

(See Anderson Aff. at 6 (noting that "on 4-15-2009 [Anderson] again was place[d] in administrative detention")).  When Anderson was transferred to the MDC, only one of his two boxes of "legal property" was transferred along with him; the other box was sent directly to Allenwood, where Anderson would later be transferred.  (See infra Section I.A.4; SAC at 9).  Anderson also alleges that on April 29, 2009, he was "deprived of [his] due process rights to carry [his] legal property for active court cases."  (SAC at 9).  Anderson does not specify, however, which employees at the MDC allegedly were responsible for depriving him of his "legal property."[9]

4.     Allenwood

On April 30, 2009, Anderson was transferred from the MDC to Allenwood. (Johnson Decl. ¶ 6).  The SAC describes a laundry list of alleged constitutional violations and other misconduct arising out of Anderson's incarceration at that facility.  Specifically, Anderson alleges that:  (i) he was deprived of his legal and personal property; (ii) he was prevented from filing a supplemental brief in support of his appeal to overturn his firearms conviction; (iii) he was denied his right of reasonable access to the courts while in administrative detention; (iv) he was falsely accused of threatening a correction officer, which resulted in his being tear gassed and placed in restraints; (v) he was assaulted by the DHO at the subsequent hearing regarding the tear-gassing incident; (vi) his staff representative at that DHO hearing intentionally overlooked documentary evidence

---

[9]     Indeed, the only defendants from the MDC named in the SAC are "John Doe R. and D. Employees currently employed M.D.C. Brooklyn, New York."  (SAC at 3).

supporting Anderson; (vii) at a subsequent DHO hearing regarding the alleged assault, the DHO did not permit him to call certain witnesses in his defense; (viii) he was not furnished with copies of the DHO reports from these two hearings in a timely manner, thus preventing him from filing timely appeals; (ix) in October 2009, he again was tear gassed and placed in restraints; (x) his legal materials were destroyed; (xi) he was denied "adequate assistance" and a "fair and impartial" DHO hearing; (xii) the BOP opened and read his mail outside of his presence; (xiii) he was denied his "constitutional right" to be placed in a halfway house when he had fewer than six months remaining on his sentence; (xiv) he sustained cuts on his arms as a result of being placed in hand restraints; (xv) he was denied food; and (xvi) he was wrongfully placed in administrative segregation on more than one occasion.  (See SAC at 10-22).

Anderson was released from custody on March 1, 2011.  (See http://www. bop.gov/iloc2/InmateFinderServlet?Transaction=NameSearch&needingMoreList=false& FirstName=marvin&Middle=&LastName=anderson&Race=U&Sex=U&Age=&x=0&y= 0) (last visited July 18, 2011).

B.    Procedural History

Anderson's initial complaint, which is dated December 29, 2009, was filed with the Pro Se Office of this Court on February 3, 2010.  (ECF No. 2).  Thereafter, on February 18, 2010, Your Honor referred the matter to me for general pretrial supervision. (ECF No. 4).  On August 26, 2010, after the Defendants moved to dismiss the complaint,

Anderson filed an amended complaint.  (See ECF Nos. 8, 16).  He filed the SAC on

October 15, 2010.  (ECF No. 27).

On December 13, 2010, the Defendants moved to dismiss the SAC or, in

the alternative, for summary judgment.  (ECF No. 30).  Anderson submitted an affidavit

in opposition to that motion on December 23, 2010, which this Court accepted for filing

on January 11, 2011.  (See ECF No. 35).  Although the Court granted Anderson's request

to file a further submission in opposition to the Defendants' motion to dismiss by

February 11, 2011, (ECF No. 36), he did not do so.  Accordingly, the Defendants filed

their reply papers on March 4, 2011.  (ECF No. 45).  Thereafter, Your Honor referred the

matter to me to report and recommend with respect to the motion.  (ECF No. 46).

II.     Discussion

A.     Claims Against the Allenwood Defendants

The Defendants contend that Anderson's claims against the defendants

employed at Allenwood ("Allenwood Defendants") must be dismissed because (1) the

Court lacks personal jurisdiction over these defendants, and (2) the Southern District of

New York is an improper venue in which to litigate these claims.  (ECF No. 32 ("Defs.'

Mem.") at 7-10).  As discussed more fully below, because it is clear that Anderson has

failed to establish the Court's jurisdiction over the Allenwood Defendants, there is no

need to address the branch of the Defendants' motion seeking dismissal based on improper venue.[10]

### 1.   Standard of Review

A plaintiff opposing a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) "bears the burden of establishing that the court has jurisdiction over the defendant." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999)).  The showing required to meet this burden varies depending upon the procedural posture of the case.  When discovery has not yet commenced, as here, the plaintiff need only make a prima facie showing of facts which, if proved, would be sufficient to establish personal jurisdiction over the defendant. See Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 465 (S.D.N.Y. 2008).  At the pre-discovery stage, a court may consider documents beyond the pleadings in determining whether personal jurisdiction exists, and any pleadings and other documents considered by the

---

[10]     In any event, it is clear that the Southern District of New York is not a proper venue in which to litigate Anderson's claims against the Allenwood Defendants.  In a case such as this, in which subject matter jurisdiction is not based exclusively on the diversity of the parties, venue is proper only in:  "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . , or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391.  Since (a) there is no evidence that all of the defendants reside in the same state, (b) a "substantial part of the events" giving rise to Anderson's claims against the Allenwood Defendants did not occur in New York, and (c) there is no apparent reason why these claims could not be heard in the Middle District of Pennsylvania, where Allenwood is situated, venue does not lie in this District.

Court must be interpreted in the light most favorable to the plaintiff.  See Bank Brussels, 171 F.3d at 784; Energy Brands, 571 F. Supp. 2d at 465.

2.    Personal Jurisdiction

For a court to assert personal jurisdiction over a party, there must be statutory authority for the court to act and its exercise of jurisdiction must not offend constitutional due process standards.  See Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007).  The jurisdiction inquiry thus "is two-fold:  first, the court looks to the law of the forum state — here, New York — to determine whether it may exert personal jurisdiction over the foreign defendant; if so, the court then considers whether subjecting the defendant to personal jurisdiction comports with the requirements of due process." Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 726 (S.D.N.Y. 2010).

New York's "long-arm" statute governs whether a New York court has personal jurisdiction over a defendant who is domiciled outside the state.  See N.Y. C.P.L.R. § 302(a).  Under that statute, a New York court may assert personal jurisdiction over a non-domiciliary if that party "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act [other than defamation] within the state . . . ; or (3) commits a tortious act [other than defamation] without the state causing injury to person or property within the state . . . ; or (4) owns, uses or possesses any real property situated within the state."  Id.

Anderson has not adduced any evidence that any of the four possible bases for long-arm jurisdiction apply to any of the Allenwood Defendants.  Indeed, as the

11

Defendants' correctly observe, the SAC concedes that "each of the USP Allenwood Defendants has a business address in the Middle District of Pennsylvania" and "contains no allegation that any of these Defendants has committed a tort (or any other action) in New York." (Defs.' Mem. at 8). Accordingly, Anderson's claims against the Allenwood Defendants should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

B.      Claims Against the New York Defendants

The Defendants further contend that Anderson's claims against the defendants employed at Otisville and the MDC ("New York Defendants"),[11] all of which allege that Anderson was denied due process in one way or another, must be rejected because (a) Anderson failed to exhaust his administrative remedies as to these claims, thereby precluding their review in this Court, and (b) even if these claims are properly before the Court, they are meritless. (Defs.' Mem. at 10-21).

1.      Exhaustion[12]

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall be brought with respect to prison conditions under . . . any . . . Federal

---

[11]     Although the MDC is located in the Eastern District of New York, the Defendants do not object to venue with respect to any claims arising out of Anderson's incarceration at that facility. (Defs.' Mem. at 8 n.5).

[12]     Because the Defendants rely upon material outside the pleadings in support of their exhaustion argument, (see Defs.' Mem. at 12-14), I have considered this branch of the Defendants' motion to dismiss as a motion for summary judgment. In that regard, I note that the Defendants gave Anderson the notice required by Local Civil Rule 12.1 when they filed their motion. (See ECF No. 33).

law, by a prisoner confined in any jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The BOP has established a four-step administrative-remedies process that federal inmates must follow to meet the PLRA's exhaustion requirement."  Petrucelli v. Hasty, 605 F. Supp. 2d 410, 419 (E.D.N.Y. 2009).

> First, an inmate must informally present an issue of concern to the staff, who shall then attempt to resolve the issue before that inmate submits a Request for Administrative Remedy.  28 C.F.R. § 542.13(a).  Second, if the inmate is dissatisfied with the informal resolution of his issue of concern, the inmate must submit a formal written Administrative Remedy Request on a BP-9 form 20 calendar days following the date on which the basis for a remedy request occurred.  [Id.] § 542.14(a).  Third, an inmate who is not satisfied with the warden's response may submit an appeal on a BP-10 form to the Regional Director within 20 calendar days of the date of the warden's signed response.  [Id.] § 542.15.  Fourth, an inmate who is not satisfied with the Regional Director's response may submit a final appeal on a BP-11 form to the General Counsel at the Central Office of Appeals within 30 calendar days of the Regional Director's signed response.  Id.

Id. at 419-20.  An "inmate may file an action in federal court only after these four steps have been completed."  Indelicato v. Suarez, 207 F. Supp. 2d 216, 219 (S.D.N.Y. 2002).  However, "filing an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the exhaustion requirement.  Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).

The Defendants are correct that Anderson failed to exhaust his administrative remedies with respect to any of his claims arising out of his incarceration

at Otisville and the MDC.  Indeed, Anderson has offered no evidence demonstrating that

he properly took any claim through all four steps of the BOP's Administrative Remedy

Program.  Although Anderson seeks to excuse the untimeliness of his appeal of DHO

Banks' decision by arguing that he did not receive a copy of the DHO Report in a timely

manner, (see SAC 8-9; Anderson Aff. ¶¶ 11-12), he admits that he received notice of the

BOP's denial of his appeal in April 2009, (SAC at 9), and does not dispute that he failed

to appeal that decision until December 2009 — eight months later.  (See Johnson Decl.

¶ 10).  Unless otherwise excused, such an untimely filing is fatal to any of Anderson's

claims arising out of the DHO hearing.  See Woodford, 548 U.S. at 83-84; Baez v.

Kahanowicz, 469 F. Supp. 2d 171, 179-80 (S.D.N.Y. 2007) (an inmate's "failure to

exhaust in a timely fashion does not excuse him from the administrative exhaustion

requirement").  Anderson has failed, however, to demonstrate that any of the recognized

exceptions to the exhaustion requirement applies in this case.  See Ruggiero v. Cnty. of

Orange, 467 F.3d 170, 175 (2d Cir. 2006) (an inmate's failure to exhaust administrative

remedies may be excused "when (1) administrative remedies are not available to the

prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in

such as way as to estop them from raising the defense; or (3) special circumstances, such

as a reasonable misunderstanding of the grievance procedures, justify the prisoner's

failure to comply with the exhaustion requirement").  It follows that the Court is

precluded from hearing any of Anderson's claims against the defendants from Otisville

and the MDC.

Nevertheless, because of the obvious importance of this case to Anderson, as evidenced by his numerous letters to the Court, I will discuss each of his claims on the merits.

2.      Merits

Even if the Court were to consider the merits of Anderson's claims against the New York Defendants, most of them would fail as a matter of law.

a.      Standard of Review[13]

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a plaintiff's claims for relief.  Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 511 (S.D.N.Y. 2010).  In deciding the motion, the Court must accept as true all well-pleaded factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff.  Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  Nevertheless, "[t]he court need not accept as true an allegation that is contradicted by documents on which the complaint relies," In re Bristol-Myers Squibb Securities Litigation, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004), as such an allegation is not "well-pleaded."  Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.), 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).  Additionally, while the complaint need not contain "detailed factual allegations, . . . [t]hreadbare recitals of the elements of a cause of action,

---

[13]      With one exception, (see infra Section II.B.2.e), the Defendants do not rely on materials extraneous to the pleadings in support of their motion to dismiss Anderson's claims against the New York Defendants for failure to state a claim.  Accordingly, there is no need to convert these aspects of the Defendants' motion to dismiss into a motion for summary judgment.

supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. __,
129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555
(2007)).

   To survive the motion, the complaint "must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id.
(quoting Twombly, 550 U.S. at 570).  Determining whether the allegations of a complaint
nudge a plaintiff's claims across the line from merely "conceivable to plausible" requires
the Court to "draw on its judicial experience and common sense."  Id. at 1950-51.  In
making its assessment, the Court may consider, in addition to the plaintiff's factual
averments, any written instrument upon which the plaintiff necessarily relies, regardless
of whether it is attached to the complaint or incorporated therein by reference.  See
Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  The Court also may
take judicial notice of indisputable facts.  See Fed. R. Evid. 201.  Additionally, when a
plaintiff such as a Anderson is proceeding pro se, the Court may rely on the plaintiff's
opposition papers in assessing the legal sufficiency of his claims.  See Crum v. Dodrill,
562 F. Supp. 2d 366, 373 n.13 (N.D.N.Y. 2008) (citing Gadson v. Goord, No. 96 Civ.
7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)).  Legal conclusions
masquerading as factual averments, however, may not be taken into account.  Twombly,
550 U.S. at 555.

   Because Anderson is proceeding pro se, the Court must read his complaint
"liberally" and interpret it "to raise the strongest arguments" that it may suggest.  Chavis

v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  "Dismissal of a pro se complaint is

nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading

requirements."  Carvel v. Ross, No. 09 Civ. 722 (LAK) (JCF), 2011 WL 856283, at *8

(S.D.N.Y. Feb. 16, 2011).

        b.      Due Process

        Liberally construing the SAC and Anderson's Affidavit in opposition to the

Defendants' motion to dismiss, Anderson contends that he was denied due process when

(a) he was placed in administrative segregation in Otisville and the MDC; (b) he did not

receive a copy of DHO Banks' decision in a timely manner; (c) he was transferred from

Otisville to the MDC without a hearing; (d) one box of his "legal property" was sent to

Allenwood rather than the MDC; (e) he was not permitted to "carry [his] legal property

for active court cases" while at the MDC; (f) he was not given the opportunity to confront

the witnesses against him at the DHO hearing; (g) the BOP failed to provide him with a

staff representative at the hearing; and (h) the BOP did not allow him to call Nash as a

witness at the hearing.  (SAC at 7-9; Anderson Aff. ¶¶ 2, 4, 8, 10-11, 18).  I will address

each of these claims in turn.

        i.      Administrative Segregation

        The Due Process Clause of the Fifth Amendment[14] provides that no person

"shall be deprived of . . . liberty . . . without due process of law."  U.S. Const. Amend. V.

---

[14]    Although Anderson refers to the Fourteenth Amendment in his Affidavit,
(Anderson Aff. at 6), since he was a federal prisoner, the Fifth Amendment applies.

To establish a procedural due process claim, a plaintiff first must show that he was deprived of a liberty or property interest.  See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972); Finley v. Giacobbe, 79 F.3d 1285, 1296 (2d Cir. 1996).  If such a deprivation occurred, the Court then must consider what process was due and whether it was provided.  See Mathews v. Eldridge, 424 U.S. 319, 333-34 (1976).

    Anderson's due process claim arising out of his placement in administrative segregation falters at the first step of the analysis.  It is well established that prison disciplinary measures, such as placing an inmate in administrative segregation, give rise to a constitutionally-protected liberty interest only when these measures "'impose[] an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  In assessing whether confinement in administrative segregation constitutes an "atypical and significant hardship," "[r]elevant factors include both the conditions of segregation and its duration."  Iqbal v. Hasty, 490 F.3d 143, 161 (2d Cir. 2007), rev'd on other grounds sub nom. Ashcroft v. Iqbal, 129 S. Ct. at 1949-54. With respect to the duration of the segregated confinement, "[w]hen confinement is of an intermediate duration — between 101 and 305 days — development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." Id.  Additionally, "the cases show a consensus in this Circuit that an inmate's confinement in the [Segregated Housing Unit] for 101 days or less — without further

deprivation — does not constitute an atypical or significant hardship." Alvarado v. Kerrigan, 152 F. Supp. 2d 350, 355 (S.D.N.Y. 2001).

It is unclear exactly how many days Anderson spent in administrative segregation in either Otisville or the MDC.  Even assuming, however, that he remained in administrative segregation from December 26, 2008, to April 30, 2009 — the entire period during which he was incarcerated in New York, a total of 126 days — Anderson's various submissions make no mention of the conditions of the administrative segregation at Otisville or the MDC "relative to ordinary prison conditions."  He therefore has not created the "detailed record of the conditions of the confinement relative to ordinary prison conditions" needed to establish a liberty interest for this "intermediate" length of confinement.  His due process claim relating to administrative segregation in Otisville and the MDC therefore should be dismissed.[15]

### ii.   DHO Report

Anderson further contends that he was deprived of due process because the BOP did not provide him with a copy of the DHO Report "in a timely manner."  (SAC at 8-9; Anderson Aff. ¶¶ 11-12).  Construing this allegation liberally, Anderson appears to claim that the BOP's delay in providing him with the DHO Report resulted in his appeal of the DHO's decision being untimely.  (Compare DHO Report at 3 (indicating that DHO

---

[15]        To the extent that Anderson maintains that the incident report and DHO report falsely allege that he fought with Nash, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986).

Report was signed on February 24) with Anderson Aff. ¶ 11 (alleging that the DHO

report was not delivered to Anderson until "sometime after March 9, 2009")).  As the

Defendants correctly observe, however, "[a]ny delay in providing [Anderson] with the

DHO report would not affect the timeliness of his appeal because an inmate is afforded

twenty (20) days from the receipt of the DHO report to submit an appeal."  (ECF No. 45

at 3; see also Ex. B (advising Anderson that he had the "right to appeal the decision of the

DHO . . . to the Regional Director within 20 calendar days of notice of the DHO's

decision and disposition")).  It follows that the delay in giving Anderson a copy of the

DHO's decision does not excuse his untimely filing, let alone provide the basis for a due

process violation.

### iii.   Transfer to MDC

In the SAC, Anderson notes that "at the end [of] 2-2009 or March I was

informed by the Unit[] Manager and Correctional Counselor . . . that I [was] going to

another jail without a hearing."  (SAC at 9).  To the extent that Anderson asserts that his

transfer from Otisville to the MDC without a hearing constitutes a violation of his due

process rights, his claim is meritless.

As noted previously, to state a procedural due process claim, a plaintiff first

must demonstrate that he was deprived of a liberty interest.  Roth, 408 U.S. at 571;

Finley, 79 F.3d at 1296.  It is well settled that "[a] prisoner has no liberty interest in

remaining at a particular correctional facility."  Davis v. Kelly, 160 F.3d 917, 920 (2d Cir.

1998) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)).  This principle holds true

even when "life in one prison is much more disagreeable than in another." Meachum,

427 U.S. at 225.  Since Anderson had no liberty interest in remaining at Otisville, his

transfer to the MDC, with or without a prior hearing, cannot form the basis of a claim

upon which relief may be granted.  Accordingly, to the extent that Anderson asserts a due

process claim arising out of his transfer to the MDC, his claim should be dismissed.

### iv.    Deprivation of "Legal" Property

Anderson also claims that he was denied his due process right of reasonable

access to the courts when (a) one box of his "legal property" was sent to Allenwood, even

though he was still incarcerated at the MDC, and (b) the BOP refused to allow him to

"carry" such property.  (SAC at 9; Anderson Aff. at 5-6).  To establish a violation of the

right of reasonable access to the courts, a plaintiff must demonstrate that the "defendant's

conduct . . . cause[d] the inmate 'actual injury,' in that a legal action that he sought to

pursue must have been 'materially prejudiced' by the defendant's actions."  Garcia v.

Watts, No. 08 Civ. 7778 (JSR), 2009 WL 2777085, at *8 (S.D.N.Y. Sept. 1, 2009)

(quoting Schick v. Apker, 07 Civ. 5775 (SHS) (DF), 2009 WL 2016933, at *8 (S.D.N.Y.

Mar. 5, 2009)).  Anderson has failed to make such a showing here.  Indeed, although he

makes reference to working on a supplemental brief in support of his appeal to the

Second Circuit challenging his conviction and sentence, he was incarcerated at

Allenwood at that time.  (See SAC at 10; ECF No. 2 (attach.)).  Anderson therefore has

failed to allege how any deprivation of his legal materials at the MDC "materially

prejudiced" any legal action he was pursuing.

v.      Deficiencies in the DHO Hearing Process

Anderson further contends that he was denied due process of law because the DHO hearing was procedurally defective in three respects:  (i) he was not afforded a staff member to represent him at the hearing; (ii) the BOP refused to produce Nash as a witness to testify on Anderson's behalf; and (iii) he was not permitted to confront the witnesses against him, particularly "confidential informants."  (Anderson Aff. ¶¶ 8, 10).

"[T]o comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given:  '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.'"  Williams v. Menifee, 331 F. App'x 59, 60 (2d Cir. 2009) (quoting Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985)).  Absent from this list of procedural safeguards is the right to confront one's accusers.  Indeed, the Second Circuit has stated that "in the context of prison disciplinary proceedings, . . . an inmate has no due process  right to . . . confrontation."  United States v. Abuhamra, 389 F.3d 309, 325-26 (2d Cir. 2004) (citing Wolff v. McDonnell, 418 U.S. 539, 567-70 (1974)).  Anderson's claim that he was denied due process because he was prohibited from confronting the witnesses against him therefore must be dismissed.[16]

---

[16]      In any event, neither the DHO Report nor the incident report mentions that the BOP relied upon evidence obtained from confidential sources in finding Anderson guilty.  (See

(continued...)

As to the absence of a staff representative, there is no evidence in the record, other than Anderson's own assertion that he "did not waive[] h[i]s right to a staff representative," suggesting that Anderson actually requested such a representative. Indeed, both the Notice of Hearing Form and DHO Report indicate that no such request was made.  (<u>See</u> Notice of Hearing Form at 1; DHO Report at 1).  As noted previously, "the Court need not accept as true an allegation that is contradicted by documents on which the complaint relies."  <u>Bristol-Myers Squibb</u>, 312 F. Supp. 2d at 555.  For this reason, Anderson's claim that he was denied due process when the BOP did not provide him with a representative at the DHO hearing should be dismissed.

Turning to Anderson's final contention — that he was denied due process when the BOP refused to allow him to call Nash as a witness at the DHO hearing — the Defendants maintain that this claim too must be dismissed because documentary evidence contradicts Anderson's allegation that he "requested to call inmate Nash" at the hearing. (Defs.' Mem. at 18 (citing Notice of Hearing Form and DHO Report); Anderson Aff. ¶ 8).  To be sure, the DHO Report indicates that Anderson waived his right to call witnesses in his defense at the hearing.  (<u>See</u> DHO Report at 1).  However, the Notice of Hearing form lists Nash as a witness whom Anderson intended to call to testify that the two "didn't have a fight," although it also appears that Anderson checked the space

---

[16](...continued)
Ex. A; DHO Report).  In fact, the DHO Report expressly states to the contrary, noting that the section of the form related to the use of confidential information was "not applicable."  (DHO Report at 2).

indicating that he did not wish to call any witnesses.  (Notice of Hearing Form at 1).

While it certainly is possible that Anderson changed his mind before the DHO hearing

and declined to call Nash, on a motion for summary judgment the Court must "view the

evidence in the light most favorable to the party opposing summary judgment and must

draw all permissible inferences" in favor of that party.[17]  Harris v. Provident Life &

Accident Ins. Co., 310 F.3d 73, 78 (2d Cir. 2002); Fischl v. Armitage, 128 F.3d 50, 55

(2d Cir. 1997).  Nevertheless, even if a genuine issue of fact exists as to whether the BOP

deprived Anderson of his due process right to call witnesses in his favor, Anderson, as

noted previously, failed to exhaust his administrative remedies.  Accordingly, this claim,

like the others, should be dismissed.

## III.    Conclusion

For the foregoing reasons, the Defendants' motion to dismiss, or, in the

alternative, for summary judgment, (ECF No. 30), should be granted.

## IV.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and

Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule

72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered

---

[17]    The Court would have to convert the Defendants' motion to dismiss this claim into a motion for summary judgment because the Defendants rely on the Notice of Hearing Form, a document that is not attached to the SAC, incorporated by reference therein, or "integral" to the complaint, Chambers, 282 F.3d at 152, in support of their argument.  (See Defs.' Mem. at 18).

to the chambers of the Honorable Sidney H. Stein and to my chambers at the United

States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing

parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an

extension of time for filing objections must be directed to Judge Stein.  The failure to file

these timely objections will result in a waiver of those objections for purposes of appeal.

See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140

(1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated:       New York, New York
             July 18, 2011

                                        _____
                                        FRANK MAAS
                                        United States Magistrate Judge

Copies to:

Marvin Anderson
421 East 168th Street
Apt. 11-C
Bronx, New York 10456

Jaimie L. Nawaday, Esq.
United States Attorney's Office
Southern District of New York
86 Chambers Street
New York, New York 10007